IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FRANK WALTERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-30-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Frank Walters requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 31, 1956, and was fifty-four years old at the time of the administrative hearing. (Tr. 34, 145). He completed the eleventh grade, and has worked as a janitor, tree trimmer, and laborer: electroplating. (Tr. 23, 173). The claimant alleges that he has been unable to work since March 1, 2008, due to a back injury and spinal disc fusion, as well as heart blockage. (Tr. 167).

### Procedural History

On July 3, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 2, 2010. (Tr. 10-24). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, he could lift/carry ten pounds frequently, and stand/walk/sit six hours in an eight-hour workday, and could only occasionally stoop, crouch, crawl, kneel, balance,

and climb stairs, but he could never climb ladders. (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, housekeeper. (Tr. 24).

## Review

The claimant contends that the ALJ erred: (i) by finding that he had a limited education rather than finding that he was illiterate; (ii) by improperly evaluating the opinion of his treating physician, Dr. Fried; (iii) by improperly evaluating his credibility; (iv) by improperly finding that he can perform light work; and (v) by failing to properly apply the Medical-Vocational Guidelines. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The record reveals that the claimant had the severe impairments of status post surgical decompressive lumbar laminectomy at L4-5, with mild central canal stenosis at L3/L4 and mild bilateral neural foraminal narrowing at L4/L5 and L5/S1; coronary artery disease, stable status post stent placement, with accompanying hypertension and unspecified hyperlipidemia. (Tr. 12). The medical evidence reveals that the claimant's coronary artery disease had resulted in the placement of five stents. (Tr. 445). The claimant also underwent a decompressive lumbar laminectomy at L4-5 in 1999, and a 2010 MRI revealed the prior fusion as well as mild central canal stenosis at L3/L4 and mild bilateral neural foraminal narrowing at L4/L5 and L5/S1. (Tr. 343-346, 491).

On his Disability Report, the typewritten forms indicate that the claimant could read and understand English, and that he could write more than his name in English. (Tr.

166). However, a disability report from the Field Office that was completed via teleclaim with the claimant indicated that the claimant had difficulty understanding, talking, and answering during the interview. In the observations section, the interviewer wrote that the claimant "had a hard time understanding what was being asked to him," and that the interviewer "had to explain what a lot of the questions meant so he could give an answer." (Tr. 187). Additionally, someone else completed the claimant's Function Report for him. (Tr. 189-196).

At the administrative hearing, the ALJ asked the claimant if he could read, write, and do basic math. The claimant responded that he had a problem with reading and writing, and explained that he has a problem understanding what he reads. (Tr. 34). The ALJ developed this issue further by asking if the claimant's struggle was with comprehending the words written, and the claimant said that it was. He testified that he would probably be able to read a note that said, "I'm going to town, I'll be back in 30 minutes," but that he would probably not be able to write the same note because of his problems with spelling and reading. (Tr. 34-35). The ALJ then said, "So basically what you're saying in your testimony you can't read or write?" The claimant replied, "Right." (Tr. 35). Additionally, the claimant testified that he had a driver's license and that he passed the driver's test on the fourth try because the administrator read the test to him so that he could answer the questions. (Tr. 39). As to his past work, the claimant testified that in his job as a tree-trimmer he did not prepare reports, but he would keep timesheets on which he had to write down the various times that he was at specific locations. He stated that he did not have to add up the hours he was at the various locations, that his

-5-

supervisor would take him to the locations and tell him where to trim the trees, and that someone else would have to help him read a map. (Tr. 42-44).

In his written opinion, the ALJ summarized the claimant's testimony and medical records. As to the claimant's ability to read, the ALJ noted at step two that the claimant followed spoken instructions well and followed written instructions step-by-step when they are read aloud to him, and also noted the report that the claimant required explanations of numerous subjects before he understands them. (Tr. 14). The ALJ then stated, "while he required a friend to complete his Adult Function Report due to his literacy problems, there is no evidence the claimant had problems completing the required paperwork throughout the disability process." (Tr. 14). The ALJ later found that the claimant had a limited education and could communicate in English. (Tr. 23).

The claimant argues that, despite the fact that he completed the eleventh grade, he is actually illiterate and should not be credited with having a "limited education." "[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 416.964(b). Although an eleventh grade level of formal education is generally classified as a "limited education," *see* 20 C.F.R. § 416.964(b)(3), the regulations *do allow* for that classification to be modified where, as here, there is evidence that the claimant's actual educational abilities contradict the completed grade level. In this case, the ALJ even acknowledged that the claimant could not complete his own Adult Function Report due to "literacy problems," but still

proceeded to make a finding as to the claimant's education based on the grade level completed despite evidence to the contrary in the record. *See Dollar v. Bowen*, 821 F.2d 530, 535 (10th Cir. 1987) ("The record establishes that Mr. Dollar, although able to sign his name, was functionally illiterate and able to manage only simple financial transactions that do not require reading or writing. A review of the record has revealed absolutely no evidence to the contrary. . . . As a matter of law, the application of grid rules based on his eighth grade education was in error. Thus, the record does not contain substantial evidence to support the ALJ's implicit finding that Mr. Dollar was literate.") [internal citations omitted].

The ALJ's failure to reconcile his finding that the claimant was illiterate with his finding that the claimant had a limited education was not harmless. Under Medical-Vocational Guideline Rule 202.09, a person who is limited to the full range of light work and is closely approaching advanced age, illiterate or unable to communicate in English, and with work experience of unskilled or none, the Rule directs a finding of disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.09. Additionally, Rule 202.00(d) states, "Where the same factors in paragraph (C)[3] of this section regarding education and work experience are present, but where age, though not advanced, is a factor which significantly limits vocational adaptability (*i. e.*, closely approaching advanced age, 50-54), and an individual's vocational scope is further significantly limited by illiteracy or

---

[3] Rule 202.00(c) states, in part: "However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled."

inability to communicate in English, a finding of disabled is warranted." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(d).

In this case, the ALJ found that the claimant could perform less than the full range of light work, and the ALJ turned to a vocational expert (VE) at the administrative hearing to determine what kind of work the claimant could perform.  When given a hypothetical including a person the same age, limited education, and past relevant work as the claimant, and the ability to do light work with the additional limitation of only occasionally stooping, but frequently crouching, crawling, kneeling, balancing, and climbing ladders and stairs, the VE testified that such a person would be able to perform the work of housekeeper, and stated that the job would apply even if the education level was changed to moderate or illiterate.  (Tr. 57-58).  The VE also testified that a person with the same age, a limited education, and past work experience as the claimant who was limited to light work and could only occasionally stoop, crouch, crawl, kneel, balance, occasionally climb stairs, and never climb ladders, would be able to perform the work of housekeeper.  (Tr. 57-58).  The ALJ did not question further about modifying the education level, and ultimately found that the claimant had the same RFC as in the second hypothetical, and that he could perform the job of housekeeper.  But even if the VE had testified that the education level would not have changed his answer, that testimony would have been in conflict with Rule 202.09, which directs a finding of disability where the claimant is illiterate.  Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence

-8-

to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704 at *4 (Dec. 4, 2000) [emphasis added]. Although the VE testified that there was no conflict between his testimony and the DOT, there *is* a conflict that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). In *this circuit* the ALJ must resolve any apparent conflict between the VE's testimony and the DOT. *See Burns v. Barnhart*, 312 F.3d 113, 126 n.8 (3rd Cir. 2002) (discussing Circuit split); *compare Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the [VE's] testimony and the DOT in this case . . . the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so.") *and Jones v. Apfel*, 190 F.3d 1224, 1229-1230 (11th Cir. 1999) ("We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."), *with Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995) ("[W]hen expert testimony conflicts with the DOT, the DOT controls.") *and Haddock*, 196 F.3d at 1091 ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should resolve the conflict as to the claimant's literacy, as well as any conflicts between the VE's testimony and the DOT and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of March, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma